**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE #:**   **23-20022-2** |
| **PLAINTIFF,** | |
| | **HON. GERSWIN A. DRAIN** |
| VS. | |
| | |
| **ZIAD KHALEL,** | |
| **DEFENDANT.** | |

| | |
|---|---|
| Regina McCullough, AUSA | Harold Gurewitz (P14468) |
| Philip A Ross | Gurewitz & Raben, PLC |
| US Attorney's Office | 333 W. Fort Street, Suite 1400 |
| 211 W. Fort Street, Suite 2001 | Detroit, MI 48226 |
| Detroit, MI 48226 | (313) 628-4733 |
| (313) 226-9100 | Email: hgurewitz@grplc.com |
| Email: regina.mccullough@usdoj.gov | |
| philip.ross@usdoj.gov | |

**DEFENDANT ZIAD KHALEL'S SENTENCING MEMORANDUM**
**AND REQUEST FOR A DOWNWARD VARIANCE SENTENCE**

## I.   INTRODUCTION

This memorandum is submitted on behalf of Ziad Khalel who is scheduled

to appear before you to be sentenced on May 13, 2026.  He entered a guilty plea to

one count of Conspiracy to Commit Health Care Fraud in violation of 18 USC

§1349. (ECF 1: Third Superseding Indictment). His Total Offense Level (15) and

Criminal History (Category I) calculated by the Probation Department provides for

a guideline range of 18-24 months. (ECF 22: PSR, ¶ 63, Pg ID 156). The

Defendant does not dispute that calculation. Defendant asks for a sentence below

that range for several reasons: because consideration of Mr. Khalel's offense conduct together with his background and characteristics establish that incarceration is not necessary to accomplish all of the purposes intended by 18 USC §3553(a); because JSIN shows that average and median ranges for sentences based on the same Offense Level and Criminal History are lower; and because it is anticipated the Government will move for a downward departure pursuant to USSG5K1.1 for Mr. Khalel's substantial assistance to the Government in its investigation and prosecution in this case. It is suggested that the fact and value of Mr. Khalel's assistance to the Government not only recognizes what the prosecutors value as the benefit of his assistance but also Mr. Khalel's recognition of his mistakes that involved him in this case and his attempts to right those wrongs.

Mr. Khalel's offense conduct involves receiving kickbacks or bribes from Co-Defendant Kazkaz in return for acting as a patient recruiter, particularly in and around  2021. (Id, PSR ¶21). That is, he brought potential patients to Mr. Kazkaz and, in return, Mr Kazkaz paid him. The claims paid by the Medicare program to Mr Kazkaz's business attributable to those referrals has been calculated to be $857,736.71. That represents payments for thirty-six patients. The payments made to Mr. Khalel were a small fraction of that amount. The small fraction of the total

paid out by Mr. Kazkaz from his scheme is evidence that Mr. Khalel was neither the architect nor a significant beneficiary.

Controlling legal principles of course require this Court to properly calculate the guideline range, treat the guidelines themselves and the range determined by the Court as advisory, and bring common sense and compassion to the sentencing process guided by the goals of deterrence, retribution and rehabilitation. In carrying out these duties, this Court must not presume the guideline range creates a sentence which is "sufficient but not greater than necessary." *Gall v. United States*, 552 US 38, 49-50 (2007).  The Court's overall mandate is to impose a sentence sufficient to comply with the purposes for the sentence stated in §3553(a)(2).

Mr. Khalel's guideline range as determined by the Probation Department, before consideration of any possible downward departure is18-24 months. As Defendant Khalel requests, this Court should vary below that range by weighing the §3553(a) factors. *Irizarry v. United States*, 553 US 708, 714-15 (2008). To vary downward does not require the court to find extraordinary circumstances. *Gall v .United States*, 552 US 38, 47 (2007). In this case this Court may do so based on post-offense conduct as in *Gall* where the Court found a variance from a guideline range of 30-37 months to three years probation justified for reasons

related to the defendant's post-offense rehabilitation. The Court explained in *Gall*

that to vary below the guideline range there would promote respect for the law by

imposing a realistic sentence that weighs the accused's offense together with his

unique life circumstances.[1]

The law permits the court to vary below a guideline range because it

disagrees with a guideline scoring on policy grounds, on individualized fact

grounds, or because the Court concludes from its view of the totality of facts that a

variance sentence is appropriate "regardless" of the guideline range. *Rita v. United*

*States*, 551 US 338, 347-348 (2007). In Mr.Khalel's case, his offense conduct,

when viewed in the context of his life experiences that brought him to the United

States from political chaos in Iraq together with his assistance to the government,

provide persuasive reasons that a sentence without incarceration will be sufficient

but not greater than necessary.

## II.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

As reviewed by Mr. Khalel's Presentence Investigation Report at The

Offense Conduct Paragraphs 14- 26, his role in Mr. Kazkaz's scheme to bill for

---

[1] *Pepper v. United States,* 562 US 476, 487-88 (2011)("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."); citing, *Koon v. United States*, 518 US 81, 113 (1996).

services not provided or necessary was as one source of patient referrals. According to the Report, Mr. Kazkaz used billing information for the referred individuals who qualified for Medicare benefits to bill for psychological services. Kazkaz made payments Mr. Khalel's company. (PSR ¶ 24). According to the Report at ¶'s 31-39, the total amount for those billings as paid by Medicare is $857,736.70. That amount has been used to calculate Mr. Khalel's guidelines. It is also the amount that will be used to impose his financial obligation to pay restitution and forfeiture because the law imposes joint and several responsibility for the loss even though that amount was not paid to him directly and payments to him represent only a fraction. (PSR ¶104). In other words, the law imposes dual financial responsibility for the same amount subject only to an exception if the Department of Justice subsequently decides that any restitution payments may be credited against the forfeiture judgment. In any case, no matter what the kind or length of custody, it is most likely that Mr. Khalel will be burdened with an enforceable financial obligation far into the future.

### III.    MR. KHALEL'S PERSONAL HISTORY AND CHARACTERISTICS.

Mr. Khalel is 55 years old. He was born on May 30, 1970 in Mosul, Iraq and grew up in relative comfort of a middle-class family life. His father was a successful businessman. His mother was a homemaker. His older siblings were

teachers, a nurse and a professor. Mr. Khalel was able to obtain a Bachelor Degree in Law in 1994 and was admitted to the practice of law in Iraq that year. His clients included banks and businesses. Before serious fighting began in Iraq, he lived in a comfortable house with his wife and young children.

Mr. Khalel and his family were targets for violence in Iraq because of their connections to the Hussein government. In 2003, his house in Mosul was destroyed by arson. His son Aous, now 26, was seriously traumatized and has not spoken since. He was physically threatened. He was violently kidnaped by people of unknown identity and held for three days leaving him traumatized.(PSR ¶ 54). He sought some protection from the Polish embassy where he had done some work. His wife and children fled to Egypt and he followed.

Mr. Khalel eventually immigrated to the US in 2009, first residing in Nashville, Tennessee and then relocating to Michigan where he was able to find support in the Chaldean-American community. After divorce, he moved with his son Rami to Oak Park, then to Rochester Hills and finally to Hazel Park. Rami has been a student at Henry Ford College.

In 2022, Mr Khalel obtained a limited admission to the State Bar of Michigan, allowing him to provide services primarily to immigrants with legal issues in Iraq. His PSR refers to his status as a "Iraqi legal consultant." (PSR ¶ 79).

His license status has been suspended as a result of his plea in this case as would occur for a fully licensed attorney after a criminal conviction.

As is reflected in his PSR, Mr. Khalel has also held various low level positions such as a motel clerk and ride-share driver. (PSR ¶ 84). As reflected by this information, his financial means have been very limited.

## IV.   SENTENCING GUIDELINES

Mr. Khalel's Total Offense Level is 15. He has no criminal history points. His prior contacts with the law are for driving infractions. Those factors provide for a guideline range of 18-24 months. According to sentencing commission data for individuals with the same offense level and criminal history over the last five fiscal years, the average length of sentence imposed was 13 months and the median was 12 months. Both are lower than the 18-24 month range calculated for Mr. Khalel.

## V.   CONCLUSION

It is respectfully submitted that a sentence of probation will be sufficient but not greater than necessary in this case to accomplish all of the purposes of sentencing. Although the sentence guideline range computed before the Government's motion for departure is 18-24 months, JSIN data consistently reports sentence ranges much lower. The average is 12 months after excluding

who like Mr. Khalel were eligible for a §5K1.1 substantial assistance departure. PSR at ¶ 120. But Mr. Khalel's case presents reasons for a sentence below that average, including the Government's departure motion, the sincere acceptance of responsibility by Mr. Khalel that represents, and his traumatic life experiences followed by his relocation to a new country and a new culture. It is submitted in this case that a deprivation of liberty is not necessary to accomplish the purposes of sentencing.

Respectfully submitted,

**GUREWITZ & RABEN, PLC**

By:   s/Harold Gurewitz
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email: hgurewitz@grplc.com
Attorney Bar Number: P14468

Date: May 5, 2026

### CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system. A copy has also been provided to USPO Jennifer Danysh via email. Sealed Exhibits A-C have been emailed to AUSA Wayne F. Pratt.

s/Harold Gurewitz (P14468)

-8-